UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LUMAR J'WEIAL,  Plaintiff,  v.  COUNTY OF AMADOR, et al.,  Defendants. | No. 2:17-cv-1937 MCE AC P  ORDER AND FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for summary judgment. ECF No. 40.

I.     Procedural History

This case proceeds on the second amended complaint. ECF No. 20. On screening, the court found that plaintiff had stated claims for relief against defendants Barge[1] and Lindsey but failed to state any cognizable claims against defendant Rivera, who was later dismissed from this action. ECF Nos. 21, 26. After the close of discovery, defendants filed a motion for summary judgment (ECF No. 40), which plaintiff opposes (ECF No 42). After defendants filed their reply, plaintiff filed an addendum to the opposition (ECF No. 46), which defendants have moved to

---

[1] Originally identified as "Borgi."

1

strike. Plaintiff then filed a motion for leave to file an addendum to the opposition (ECF No. 49), which defendants oppose (ECF No. 51).

II.  Plaintiff's Allegations

The second amended complaint alleges that plaintiff practices Judaism and that from April 10 through April 18, 2017, defendants Barge and Lindsey denied him religious meals for the Passover holiday in retaliation for filing multiple grievances. ECF No. 20. Specifically, plaintiff alleges that on April 11, 2017, Barge conducted an interview at plaintiff's cell door during which Barge told plaintiff that he was not able to get a kosher meal and "since you are not a real Jew and you continue to file 602's you can expect worse." Id. at 5. Plaintiff filed a grievance with defendant Lindsey, who was Barge's supervisor, and was interviewed by Lindsey on April 15, 2017. During the interview Lindsey stated that "plaintiff had apparently made some people mad," and as a staff member he was "on staff's side." Id.

III.  Motion for Summary Judgment

A.  Defendants' Arguments

Defendants argue that they are entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing suit. ECF No. 40. They assert first that plaintiff's grievance related to the claims in this action failed to exhaust his administrative remedies against defendants because they were not identified in the appeal, and second that the appeal was cancelled as untimely and therefore was not properly exhausted. ECF No 40-1 at 7-8.

B.  Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document in response to defendants' statement of undisputed facts that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff appears to argue that he properly exhausted because he named the defendants in the CDCR 22 Forms, which were the first step of filing a grievance, and that his appeal was timely. ECF No. 42.

With respect to plaintiff's addendum to the opposition and subsequent request for leave to file an addendum, the court construes these as a surreply and request for leave to file a surreply, respectively. Local Rule 230, which sets out the procedures for civil motions, contemplates a motion, a response, and a reply. There is no provision for a surreply. Moreover, the court has reviewed plaintiff's surreply and motion and finds that they merely repeat his arguments that the Form 22 is part of the grievance process and that his appeal was timely without providing any additional details. Defendants' motion to strike the surreply will therefore be granted and the motion for leave to file a surreply will be denied.

IV.   Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

3

of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is

////

1  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving
2  party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
3        In the endeavor to establish the existence of a factual dispute, the opposing party need not
4  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
6  trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)
7  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the
8  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see
9  whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal
10 quotation marks omitted).
11       "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
12 court] draw[s] all inferences supported by the evidence in favor of the non-moving party."
13 Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).
14 It is the opposing party's obligation to produce a factual predicate from which the inference may
15 be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to
16 demonstrate a genuine issue, the opposing party "must do more than simply show that there is
17 some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations
18 omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the
19 non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank,
20 391 U.S. at 289).
21       Defendants simultaneously served plaintiff with notice of the requirements for opposing a
22 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for
23 summary judgment.  ECF No. 40-7; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.
24 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);
25 Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).
26     V.     Legal Standard for Exhaustion
27       Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are
28 subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA,

"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

VI.    California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in the California Code of Regulations. At the time relevant to this complaint, those regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2017).

At the time plaintiff was proceeding through the appeals process, it was comprised of three levels of review for most types of appeals. Id. § 3084.7. Except for allegations of sexual violence or staff sexual misconduct, an inmate was required to "submit the appeal within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first

having knowledge of the action or decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed." Id. § 3084.8(b). The appeal was required to "list all staff member(s) involved and shall describe their involvement in the issue" and the inmate did not have identifying information, they were to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id., § 3084.2(a)(3).

Each prison was required to have an "appeals coordinator" whose job was to "screen all appeals prior to acceptance and assignment for review." Id. § 3084.5(a), (b). The appeals coordinator could also refuse to accept an appeal, whereupon "the inmate or parolee [would] be notified of the specific reason(s) for the rejection or cancellation of the appeal and of the correction(s) needed for the rejected appeal to be accepted." Id. § 3084.5(b)(3). An appeal could be cancelled if the "[t]ime limits for submitting the appeal [were] exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints." Id. § 3084.6(c)(4). A cancelled appeal could not be accepted unless it was determined that the cancellation was in error or new information made the appeal eligible for further review. Id. § 3084.6(a)(3), (e). However, the cancellation of the appeal could be separately appealed. Id. § 3084.6(e). "[A] cancellation or rejection decision [did] not exhaust administrative remedies." Id. § 3084.1(b).

VII.   Undisputed Material Facts

Plaintiff did not separately respond to Defendants' Statement of Undisputed Facts (DSUF), and the facts are therefore deemed undisputed except as otherwise discussed. Additional facts have been taken from the records of plaintiff's appeals, the authenticity of which are not in dispute.

At all relevant times, plaintiff was a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) and housed at Mule Creek State Prison (MCSP). DSUF ¶ 1. On April 24, 2017, plaintiff submitted Appeal No. MCSP-C-17-01568, which was received by the Office of Grievances on April 26, 2017. DSUF ¶¶ 15-16. The appeal stated as follows:

> My 5th Amendment right Article 4 Section 3 of the United States Constitution are my rights to religion.  Which during the month of April, and the times of Pesach (Passover) were denied to me.  On April 10th, 11th and half of the 12th I did receive my Passover breakfast and dinner.  Yet for the remainder of Passover the 13th, 14th, 15th, 16th 17th and 18th, of 2017; Pesach (Passover) I was denied my religious right.
>
> The kitchen supervisor should have the list for inmates on kosher which will show upon arrival to mule Creek in 2016 I was placed on the kosher list and have been since 2012 through.
>
> So there's no reason to send me 2 ½ days of Passover and not continue.

ECF No. 40-4 at 20, 22.  The appeal was granted in part on May 31, 2017.  DSUF ¶ 20.  The appeal form indicates it was mailed or delivered to plaintiff on June 6, 2017.  ECF No. 40-4 at 20.

On June 8, 2017, plaintiff submitted his appeal to the second level, which was received by the Office of Grievance on June 13, 2017.  ECF No. 40-4 at 20-21.  The appeal was granted in part at the second level on July 25, 2017.  DSUF ¶ 23.  The appeal indicates that it was mailed or delivered to plaintiff on July 27, 2017.  ECF No. 40-4 at 21.

Plaintiff appealed to the third level where his grievance was assigned Appeal Log No. 1712841.  DSUF ¶ 30.  The appeal was received by the Office of Appeals on October 17, 2017.  DSUF ¶ 32.  On December 7, 2017, a decision was issued cancelling the appeal because it was untimely.[2]  DSUF ¶ 32.  The response included the following advisement:

> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  Be advised, you must submit an appeal of a cancellation to the appeals office that issued the cancellation.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.  You have 30 calendar days to appeal the cancellation.  Time constraints begin from the date on the screen out form which cancelled your appeal.

ECF No. 40-6 at 17.  The response also stated that "[t]his was inappropriately sent back to the SLR on 9/26/17.  The 695 letter dated 10/5/17 directed you to appeal at the Third Level."  Id. There is no indication that plaintiff appealed the cancellation.  DSUF ¶ 33.

---

[2] Plaintiff argues that the "department of appeals got the appeal on time," but does not dispute that this was the reason the appeal was cancelled.  ECF No. 42.

9

Between the alleged violation of his rights and the filing of the complaint in this action, plaintiff did not file any other grievances related to the denial of his Passover meals or any grievances alleging that defendants retaliated against him by denying him Passover meals. DSUF ¶¶ 26-29.

VIII. Discussion

There is no dispute that a grievance process existed during the relevant time period. There is also no dispute that Appeal No. MCSP-C-17-01568 is the only appeal that dealt with plaintiff's claim that he was denied his Passover meal in April 2017. Instead, the parties dispute (1) whether the appeal was sufficient to exhaust plaintiff's claims against defendants when they were not identified in the grievance, and (2) whether the grievance was exhausted or plaintiff was excused from exhaustion.

In opposition to the motion, plaintiff argues that his appeal properly identified defendants because the CDCR 22 Forms were a part of the grievance process and showed plaintiff had a dialogue with defendants. ECF No. 42 at 1-2. He also makes a conclusory assertion that his appeal was timely submitted but provides no details from which the court can determine the timeliness of his third-level appeal. Id. at 3. However, even if the court assumes that Appeal No. MCSP-C-17-01568 was sufficient to address plaintiff's claims against defendants and that the cancellation as improper, it is undisputed that plaintiff had the ability to appeal the cancellation of his third-level appeal but failed to do so. Plaintiff's failure to appeal the cancellation renders the appeal unexhausted. See Wilson v. Zubiate, 718 F. App'x 479, 481-82 (9th Cir. 2017) (even assuming cancellation of grievance was improper, prisoner failed to exhaust his administrative remedies when he did not appeal cancellation); Cortinas v. Portillo, 754 F. App'x 525, 527 (9th Cir. 2018) (some remedy remained available because prisoner could have appealed cancellation decision); Hunter v. Sorheim, No. 2:15-cv-9253 DMG SK, 2018 WL 1475034, at *2-3, 2018 U.S. Dist. LEXIS 49714, at *6-10 (C.D. Cal. Feb. 27, 2018) (where grievance was cancelled as untimely, plaintiff failed to exhaust administrative remedies because he could have appealed the cancellation), aff'd, 782 F. App'x 661 (9th Cir. 2019).

////

IX. Conclusion

For the reasons outlined above, the court finds that plaintiff has not exhausted his administrative remedies prior to filing this lawsuit and the motion for summary judgment should be granted.

X. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendants' motions for summary judgment be granted because you did not exhaust your grievance at the third level before starting this case and you have not shown that you were prevented from exhausting.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to strike (ECF No. 48) is GRANTED and the Clerk of the Court is directed to strike plaintiff's addendum to the opposition (ECF No. 46) from the record.

2. Plaintiff's motion to for leave file an addendum to the opposition (ECF No. 49) is construed as a motion to file a sur-reply and is DENIED.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 40) be GRANTED.

2. Judgment be entered for defendants.

3. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 7, 2022.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE